**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SULENNY P.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | **Civil Action No. 21-12436 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Sulenny P. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (*See* D.E. No. 1 ("Complaint" or "Compl.") ¶ 1). On January 24, 2023, Plaintiff filed a brief in support of the instant appeal. (D.E. No. 12 ("Mov. Br.")).[1] The Commissioner opposed on April 23, 2023. (D.E. No. 19 ("Opp. Br.")). The court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I. BACKGROUND

On June 21, 2019, Plaintiff filed an application for DIB, alleging disability as of June 9, 2018. (Compl. ¶¶ 4 & 6). She claimed disability based on several medical impairments, including orthopedic, neurological, and psychiatric conditions; pituitary adenoma;[2] vitamin B-12 deficiency;

---

[1] As Plaintiff did not include page numbers in her moving brief, all citations to that document refer to ECF pagination.

[2] Pituitary adenoma is a "benign tumor of the pituitary gland, which is located in the middle of the head, below the brain." *Rodriguez v. Smith*, No. 03-3675, 2006 WL 680965, at *5 (E.D. Pa Mar. 16, 2006).

and proprioception.[3] (*Id.* ¶ 5). The application was denied both initially and on reconsideration. (D.E. No. 7, Administrative Record ("R.") at 19). On July 22 and September 11, 2020, an Administrative Law Judge ("ALJ") held hearings, at which Plaintiff, a vocational expert, and medical experts testified. (*Id.* at 37–113).

On September 23, 2020, the ALJ denied Plaintiff's application for DIB. (*Id.* at 31). The ALJ held that Plaintiff was not disabled as of July 9, 2018, within the meaning of the Act, because Plaintiff's impairment did not meet or equal the medical severity of a listed impairment and Plaintiff had the residual functional capacity ("RFC") to perform work for which there exists a significant number of jobs in the national economy. (*Id.* at 22–30). More specifically, the ALJ determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the [C]laimant can occasionally climb stairs, bend, kneel, and crawl. The [C]laimant can never climb ladders, scaffolds, or ropes and can never balance. The [C]laimant cannot walk on uneven surfaces. The [C]laimant can frequently use her hands for handling and fingering. The [C]laimant can work with no contact with unprotected heights or dangerous machinery. The [C]laimant can do work that can be learned in one month or less and that involves simple instructions. The [C]laimant can have occasional contact with supervisors and minimal contact with the general public. The [C]laimant can work in proximity of co-workers but not together with them.

(*Id.* at 23). Relying on the vocational expert's testimony, the ALJ found that an individual with the above RFC could perform work as a Billing and Credit Clerk (500,000 jobs nationally), Telephone Information Clerk (18,000 jobs nationally), and Shipping Checker (12,000 jobs nationally). (*Id.* at 30). On April 15, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–2). Plaintiff

[3] Proprioception is the "body's ability to sense movement, action, and location." (Mov. Br. at 12 n.2). Common symptoms include falling when you walk across uneven surfaces; not understanding your own strength; having uncoordinated movements, such as not walking straight; and having balancing issues. (*Id.*).

filed the instant appeal on June 11, 2021, which the Court has subject-matter jurisdiction to decide under 42 U.S.C. § 405(g). (Compl. ¶ 1). On January 24, 2023, Plaintiff filed a brief in support of the instant appeal. (Mov. Br.). The Commissioner thereafter filed an opposition. (Opp. Br.).

## II. LEGAL STANDARD

### A. Standard Governing Benefits

To qualify for disability benefits, a claimant must show that he or she is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." U.S.C. § 423(d)(2)(A).

To determine whether a given claimant qualifies as disabled, "[t]he Commissioner uses a five-step process." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four[,]" and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).[4]

[4] "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2 (citing *Yuckert*, 482 U.S. at 146 n.5).

If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4).

***Step One***. At step one, the claimant must show that he or she has not engaged in any substantial gainful activity since the onset date of his or her severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he or she is not disabled under the Act, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b). If the claimant demonstrates he or she has not engaged in substantial gainful activity, the analysis proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4).

***Step Two***. At step two, the claimant must show that his or her medically determinable impairments or a combination of impairments were "severe" as of the date of last insured ("DLI"). 20 C.F.R. § 404.1520(a)(4)(ii). *Jones v. Comm'r of Soc. Sec.*, No. 17-04691, 2023 WL 7180651, at *6 (D.N.J. Nov. 1, 2023) ("To be eligible for disability benefits, a claimant must establish that she was disabled prior to the date she was last insured." (first citing *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990); then citing *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x. 684, 688 (3d Cir. 2020))).[5] An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

***Step Three***. At step three, the claimant may show, based on medical evidence, that his or her impairments met or equaled an impairment listed in the Social Security Regulations' "Listings

---

[5] A Title II claimant seeking disability insurance benefits must prove disability prior to the DIL. *See* 20 C.F.R. § 404.131. Claimant makes no argument that the ALJ misstated the time period under consideration for disability insurance benefits. (*See generally* Mov. Br.; R.).

of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (the "Listings") as of the DLI. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant makes such a showing, he or she is presumptively disabled and entitled to benefits. *Id.* If he or she does not make that showing, he or she proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4).

***Step Four***. At step four, the claimant must show that he or she lacked the residual functional capacity ("RFC") to perform his or her past relevant work as of the DLI. 20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the claimant lacks the RFC to perform his or her past relevant work, the analysis proceeds. *Id*.

***Step Five***. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his or her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v); *see, e.g.*, *Plummer*, 186 F.3d at 428. If the Commissioner shows that the claimant can perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v).

**B. Standard of Review**

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360. The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek*. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla[.]'" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). In other words, on appeal, a claimant bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

**III. THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on July 9, 2018. (R. at 21).

At step two, the ALJ found that Plaintiff had the following severe impairments, which significantly impaired her ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: "pituitary adenoma with elevated prolactin, Vitamin B-12 deficiency; proprioception caused by the B-12 deficiency; degenerative disc disease of the cervical spine,

fibromyalgia; unspecified depressive disorder, unspecified somatic disorder; anxiety disorder (20 CFR 404.1520(c))." (R. at 21). However, the ALJ also found that several of Plaintiff's impairments were not severe, including her fibromyalgia and Syringomyelia diagnoses[6] (*id.* at 21–22), because the record did not contain evidence of neurological consequences from those medical issues. (*Id.*). The ALJ did not explain why she found Plaintiff's fibromyalgia to be both severe and not severe.

At step three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (R. at 22). The ALJ considered the following impairment Listings: 11.05 (for benign brain tumors); 11.14 (for peripheral neuropathy); 12.02 (for neurocognitive disorders), 12.04 (for depressive, bipolar, and related disorders), 12.06 (for anxiety and obsessive-compulsive disorders), and 12.07 (for somatic symptom and related disorders). (R. at 22); 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.05, 11.14, 12.02, 12.04, 12.06, & 12.07 (2023). The ALJ found that Plaintiff's impairments did not meet or medically equal Listings 11.05 and 11.14 because Plaintiff

> does not have disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking or use the upper extremities, or marked limitation in physical functioning, and in one of the following: understanding, remembering, or applying; interacting with others; or concentrating, persisting, or maintaining pace or adapting or managing oneself.

---

[6] Syringomyelia is a neurological disorder in which a fluid-filled cyst, also knows as a syrinx, forms within the spinal cord. National Institute of Neurological Disorders and Stroke, *Syringomyelia* (August 19, 2026), https://www.ninds.nih.gov/health-information/disorders/syringomyelia#:~:text=get%20more%20information%3F-,What%20is%20syringomyelia%3F,the%20rest%20of%20the%20body. Over time, the cyst can grow, causing damage to the spinal cord and compressing nerves that transmit signals between the brain and the body. *Id.*

(R. at 22). Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal Listings 12.02, 12.04 12.06, and 12.07 (under either the "Paragraph B" or "Paragraph C" criteria) because—although Plaintiff has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself—her mental impairments did not result in one extreme or two marked limitations. (*Id.* at 22–23).

At step four, and as described at length above, the ALJ found that Plaintiff had the RFC to perform sedentary work, subject to various restrictions. (R. at 23). In determining the RFC, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 24). The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not . . . fully supported by the objective medical evidence." (*Id.* at 25). The ALJ also went through the evidence she considered in fairly significant detail. (*Id.* at 25–29). Nonetheless, the ALJ found that, based on her RFC, Plaintiff was unable to perform her past work as a Customer Service Representative, Scheduler, or Intake Specialist. (*Id.* at 29).

Finally, at step five, the ALJ found, relying on a vocational expert's testimony, that "considering the [C]laimant's age, education, work experience, and residual functional capacity," she could perform jobs that exist in significant numbers in the national economy—in particular, as a Billing and Credit Clerk (500,000 jobs), Telephone Information Clerk (18,000 jobs), and Shipping Checker (12,000 jobs). (*Id.* at 29–30).

## IV. DISCUSSION

Plaintiff challenges the ALJ's determinations at steps two, three, and four. (*See generally* Mov. Br.). Specifically, Plaintiff argues that, at both steps two and three, the ALJ did not issue comprehensible or judicially reviewable findings. (*Id.* at 2). Plaintiff further argues that, with regard to step two, the ALJ erred by finding fibromyalgia to be both a severe and non-severe impairment. (*Id.* at 13). Concerning step four, Plaintiff argues that the ALJ did not adequately explain her conclusion regarding Plaintiff's RFC with evidence in the record. (*Id.* at 30). In opposition, the Commissioner argues that substantial evidence supports the ALJ's step two, step three, and RFC findings. (Opp. Br. at 14–27). The Court considers each step of the ALJ's analysis in turn.

### A. Step Two

Plaintiff argues that the ALJ committed error by finding Plaintiff's fibromyalgia to be both a severe impairment and a non-severe, medically determinable impairment. (Mov. Br. at 12). Plaintiff also argues that the ALJ did not employ Social Security Ruling ("SSR") 12-2p[7] in her analysis. (*Id.* at 18). The Commissioner opposes, arguing that the ALJ considered Plaintiff's fibromyalgia diagnosis at step three and for her RFC determination and that the ALJ does not have an obligation to explicitly reference SSR 12-2p in her decision. (Opp. Br. at 10–14). For the following reasons, the Court agrees with the Commissioner.

---

[7] SSR 12-2p provides "guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia." *Evaluation of Fibromyalgia*, SSR 12-2p, 2012 WL 3104869, at *1 (S.S.A, July 25, 2012).

### i. The Severity of Fibromyalgia

Plaintiff argues that the ALJ committed reversable error by finding fibromyalgia to be both severe and non-severe. (Mov. Br. at 12). The ALJ initially concluded that fibromyalgia was a severe impairment:

> The [C]laimant has the following severe impairments: pituitary adenoma with elevated prolactin, Vitamin B-12 deficiency; proprioception caused by B-12 deficiency; degenerative disc disease of the cervical spine, ***fibromyalgia***; unspecified depressive disorder, unspecified somatic disorder; anxiety disorder (20 CFR 404.1520(c)).

(R. at 21 (emphasis added)). However, the ALJ subsequently found that fibromyalgia was not a severe impairment:

> The [C]laimant has been diagnosed with ***fibromyalgia*** and the record mentions multiple trigger points, it does not specify which 11 out of 18 trigger points are present (see Exhibit 9F/4). The [C]laimant also has cord Syringomyelia. The medical expert testified that he sees no evidence of neurological consequences from this problem. Therefore, these are ***not considered severe impairments***.

(*Id.* at 21–22 (emphasis added)). Plaintiff argues that this error is not harmless because the ALJ did not mention the fibromyalgia diagnosis in step three—or any other subsequent step—of her analysis. (Mov. Br. at 13–14 & 16). The Commissioner argues that, although the ALJ's decision at step two was unclear, any error was not fatal and that the ALJ considered Plaintiff's fibromyalgia diagnosis at step three and for her RFC determination. (Opp. Br. at 10–14). Upon careful consideration of the record, the Court finds that the Commissioner has the better argument.

At step two of the analysis, an ALJ must evaluate whether the claimant's medically determinable impairments or combination of impairments are "severe." 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ finds that a plaintiff has at least one severe impairment at step two, she proceeds to the remaining steps of the analysis. *Id.* As such, generally, "[a] failure to find a

medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013). In determining a plaintiff's RFC at step four, however, the must consider *all* of that plaintiff's medically determinable impairments from step two, including those that were found to be "non-severe." *See* 20 C.F.R. § 416.945(a)(2); *see also Weitzel*, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the [RFC]."); *Brandt v. Kijakazi*, No. 22-0197, 2023 WL 2578253, at *4 (M.D. Pa Mar. 20, 2023). As such, "[e]ven if the ALJ determines that a claimant's impairments are non-severe [at step two] . . . a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Marsella v. Comm'r of Soc. Sec.*, No. 18-2294, 2019 WL 912141, at *9 (D.N.J. Feb 25, 2019).

Thus, "if the ALJ finds in a Plaintiff's favor at step two, 'even if [the ALJ] had erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless,'" *Williams v. Comm'r of Soc Sec.*, No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (quoting *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)), as long as the ALJ considered *all* of the claimant's impairments—including those found to be non-severe—during the RFC determination at step four. *See Williams*, 2013 WL 4500335, at *17. Where, on the other hand, "it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration." *Brandt*, 2023 WL 2578253, at *5 (internal citation omitted); *see also Fitzpatrick v. Comm'r of Soc. Sec.*, No 19-7608, 2020 WL 1872978, at *4–5 (D.N.J. Apr. 15, 2020).

Here, the ALJ found that Plaintiff's fibromyalgia was both a severe and non-severe impairment. (R. at 21–22). However, because the ALJ found that Plaintiff's pituitary adenoma

with elevated prolactin, Vitamin B-12 deficiency, proprioception, degenerative disc disease of the cervical spine, unspecified depressive disorder, unspecified somatic disorder, and anxiety disorder were severe impairments (*id.* at 21), the ALJ proceeded to the remaining steps of the analysis (*id.* at 22–29). As such, even if the ALJ erred in determining that Plaintiff's fibromyalgia was both a severe and non-severe impairment, the error was harmless as long as the ALJ considered that impairment in the remaining steps of the analysis, including at step four during the RFC determination.[8] *See Williams*, 2013 WL 4500335, at *17; *Brandt*, 2023 WL 2578253, at *5. The Court finds that the ALJ did so.

In the hearing decision, after finding that Plaintiff's fibromyalgia was both a severe and non-severe impairment, the ALJ noted that "the undersigned considered all of the [C]laimant's medically determinable impairments, including those that are not severe, when assessing his residual function capacity." (R. at 22). A review of the RFC analysis at step four reveals that the ALJ considered Plaintiff's fibromyalgia. (*Id.* at 23–29). The RFC analysis, at multiple points, references that condition. (*Id.*). Accordingly, it is clear based on the ALJ's discussion at step four that the ALJ considered the limitations and restrictions imposed by all of Plaintiff's impairments, including fibromyalgia, in determining the RFC. Therefore, the ALJ's error was harmless. *See Williams*, 2013 WL 4500335, at *17; *see also Brandt*, 2023 WL 2578253, at *5.

Plaintiff counters that, although the Commissioner claims to have considered "all of the [C]laimant's medically determinable impairments, including those that are not severe" in the RFC determination (*id.* at 21), there is no indication that the ALJ found Plaintiff's fibromyalgia or syringomyelia to be "medically determinable." (Mov. Br. at 13). The Court is not persuaded.

---

[8] For this reason, the Court declines to address whether the ALJ's reliance on the fact that Plaintiff's fibromyalgia diagnosis did not specify which trigger points were present was insufficient under the substantial evidence rule to categorize this impairment as non-severe.

First, the ALJ did specifically name fibromyalgia, among other conditions, as medically determinable. (R. at 21 ("The above medically determinable impairments . . ."). Second, the fact that the ALJ evaluated the impairments' severity during step two of the analysis indicates that she found such impairments to be medically determinable. *See* 20 C.F.R. § 416.920(a)(4)(ii). Furthermore, the ALJ explicitly considered Plaintiff's fibromyalgia during step four of her analysis (R. at 23–29), which indicates that any error in her step-two evaluation was harmless. *See Williams*, 2013 WL 4500335, at *17; *see also Brandt*, 2023 WL 2578253, at *5. The Court therefore finds Plaintiff's arguments unavailing.

In sum, the Court is not persuaded that the ALJ's error was harmful because the ALJ found other severe impairments at step two and considered Plaintiff's fibromyalgia during the RFC determination. *See Williams*, 2013 WL 4500335, at *17. As such, the ALJ did not commit reversable error at step two of the analysis. *See Brandt*, 2023 WL 2578253, at *5–6.

**ii. Failure to Reference SSR 12-2p**

Plaintiff also argues that the ALJ inaccurately addressed Plaintiff's fibromyalgia by failing to consider it pursuant to SSR 12-2p at step two of the analysis, or to otherwise acknowledge it in the decision. (Mov. Br. at 13–14). The Commissioner opposes, arguing that the ALJ's indication that she considered all of Plaintiff's impairments, both severe and non-severe, in evaluating Plaintiff's claimed disability fulfilled her obligation, and there is no obligation to explicitly discuss SSR 12-2p. (Opp. Br. at 11–12). For the foregoing reasons, the Court agrees with the Commissioner.

Here, the ALJ did not cite SSR 12-2p when analyzing Plaintiff's fibromyalgia. However, this is not reversable error because, as previously discussed, the ALJ considered Plaintiff's fibromyalgia during step four of her analysis (R. at 23–29), which indicates that any error in her

step two analysis was harmless. *See Williams*, 2013 WL 4500335, at *17; *see also Brandt*, 2023 WL 2578253, at *5. At step four, the ALJ considered Plaintiff's impairments and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 25). Nevertheless, based on a review of the medical evidence in the record, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). As a result, the ALJ concluded that Plaintiff had the RFC to perform sedentary work given the medical evidence in the record, which included information concerning Plaintiff's fibromyalgia. (*Id.* at 23–28). Accordingly, the ALJ's failure to reference SSR 12-2p does not create a basis to remand because the RFC determination was based on a full review of the medical evidence in the record. *See Accomando v. Comm'r of Soc. Sec.*, No. 13-1391, 2014 WL 6389060, at *7 (D.N.J. Nov. 14, 2014) ("Thus, [SSR 12-2p] is irrelevant because the severity of Plaintiff's fibromyalgia was not discounted in ALJ Krappa's ruling. Instead, ALJ Krappa relied on Dr. Fechner's testimony that Plaintiff, despite her Fibromyalgia and other impairments, could perform certain sedentary work."). Therefore, the ALJ's failure to reference SSR 12-2p is not reversible error.

**B. Step Three**

Plaintiff also argues that the ALJ did not provide judicially reviewable findings at step three. (*See, e.g.,* Mov. Br. at 18–19). Specifically, she argues that the ALJ (i) failed to mention various impairments at step three of the analysis, including disordered proprioception, fibromyalgia, cervical disc disease with radiculopathy, and lumbar disc disease; (ii) did not claim to have considered all severe impairments, in combination; (iii) did not mention the evidence supporting the conclusion that Plaintiff failed to meet or equal Listings 11.05 and 11.14; and (iv)

did not provide evidence for her conclusion that Plaintiff did not meet or equal the "paragraph B and C" criteria for her psychiatric conditions. (*Id.* at 17–23). The Commissioner opposes, arguing that the ALJ fulfilled her obligations and provided sufficient evidence for her conclusions. (Opp. Br. at 11, 15, & 18–19). For the following reasons, the Court agrees with the Commissioner.

**i. Failure to Consider Other Impairments and All Severe Impairments in Combination**

Plaintiff argues that the ALJ, at step three of the evaluation, failed to consider certain impairments and did not consider all severe impairments in combination. (Mov. Br. at 18). Specifically, Plaintiff argues that the ALJ failed to consider her disordered proprioception, fibromyalgia, cervical disc disease with radiculopathy, and lumbar disc disease. (*Id.* at 17–18). In opposition, the Commissioner argues that the ALJ stated that she considered Plaintiff's combination of impairments when determining whether she met the severity of any of the listed impairments. (Opp. Br. at 19). The Court agrees with the Commissioner on this point.

When conducting a combination analysis at step three, an ALJ must consider whether a Plaintiff's combination of impairments is equivalent to any listed impairment. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d. Cir. 2000). An ALJ fails to adequately consider the combination of impairments when the ALJ only makes conclusory statements about the combination of impairments, precluding meaningful judicial review. *See Torres v. Comm'r of Soc. Sec.*, 279 Fed. App'x 149, 152 (3d. Cir. 2008). The ALJ need not, however, "use particular language or adhere to a particular format in conducting h[er] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Thus, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at her ultimate conclusion. *See id.* Further, "an ALJ fulfills h[er] obligation to consider a claimant's impairments in combination with one another

if the ALJ explicitly indicates that [s]he has done so and there is 'no reason not to believe h[er],'" *Grandos v. Comm'r of Soc. Sec.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 Fed. App'x 186, 189 (3d Cir. 2008)). Here, the ALJ explicitly stated that "the [C]laimant d[id] not have an impairment or *combination of impairments* that me[t] or medically equal[ed] the severity of one of the listed impairments." (R. at 22). This fulfills the ALJ's obligation. *See Grandos*, 2014 WL 60054, at *9. Accordingly, the Court agrees with the Commissioner.

**ii. Listing 11.05 for Benign Brain Tumors; 11.14 for Peripheral Neuropathy; and 1.04 and 14.09 for Inflammatory Arthritis**

Plaintiff argues that the ALJ neglected to include evidence demonstrating why Plaintiff failed to meet or at least equal Listings 11.05 and 11.14. (Mov. Br. at 16). Plaintiff further argues that the ALJ should have considered Listings 1.04[9] and 14.09 (inflammatory arthritis). (*Id.*); 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.01–15 & 14.09. The Commissioner opposes, arguing that the ALJ considered Plaintiff's combination of impairments in evaluating whether she met or equaled the severity of the listed impairments and explicitly stated Plaintiff failed to meet the criteria for Listings 11.05 and 11.14. (Opp. Br. at 19). Furthermore, the Commissioner argues that Plaintiff failed to provide evidence to show why she meets Listing 14.09. (*Id.* at 12). The Commissioner does not address Plaintiff's argument concerning Listing 1.04. (*See generally id*). For the following reasons, the Court agrees with the Commissioner.

Listing 11.05 addresses the benign brain tumors category of neurological disorders, which is characterized by "noncancerous (nonmalignant) abnormal growths of tissue in or on the brain that invade healthy brain tissue or apply pressure on the brain or cranial nerves." 20 C.F.R. pt.

[9] Listing 1.04 no longer exists. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.01–15. As such, the Court cannot evaluate it herein.

404, subpt. P, app. 1, §§ 11.00J & 11.05. To meet Listing 11.05, a Plaintiff must satisfy either 11.05A or 11.05B. *Id.* § 11.05. 11.05A requires that the Plaintiff have "disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." *Id.* § 11.05A. 11.05B requires that the Plaintiff have a "marked limitation in physical functioning, and in one of the following: (1) understanding, remembering, or applying information; or (2) interacting with others; or (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself." *Id.* § 11.05B. Listing 11.14 provides the peripheral neuropathy category of neurological disorders. *Id.* § 11.14. It has the exact same requirements as Listing 11.05. *See id.* §§ 11.14A & 11.14B. To find medical equivalence to Listings 11.05 and 11.14, an ALJ must consider whether the "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria," and "will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [a claimant's] impairment(s) to that of a listed impairment." 20 C.F.R. § 404.1529(d)(3).

As an initial matter, where a plaintiff alleges error by the ALJ, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). This means that a plaintiff must explain how she "might have prevailed at step three if the ALJ's analysis had been more thorough." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). And a plaintiff must "affirmatively point[] to specific evidence that demonstrates [s]he should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Plaintiff here has failed to meet this burden. Although Plaintiff argues generally that the ALJ ignored evidence through which Plaintiff may indeed meet or equal Listings 11.05 and 11.14, and failed to consider Listings 1.04 and 14.09, Plaintiff herself

does not identify any medical evidence establishing the severity of her impairments or explain how she meets these Listings. (Mov. Br. at 16–18). Indeed, Listing 1.04 does not even appear in the Code of Federal Regulations. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.01–15. The only listing Plaintiff attempts to justify as matching her impairments is Listing 11.05. (Mov. Br. at 16). But Plaintiff's arguments regarding this Listing are insufficient. While Plaintiff points to the medical and psychiatric experts' testimony stating that Plaintiff's balance "was affected" and that her social anxiety produced "moderate to marked" limitations in her ability to interact with others (*id.* at 16–17), this evidence does not demonstrate the severity necessary to meet Listing 11.05. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.05.[10] As such, Plaintiff fails to meet her burden of presenting specific evidence that she satisfied the 11.05 criteria—or the criteria of any other legitimate listing—such that the outcome would have been different if the ALJ had been more thorough. *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005).

Additionally, the Court finds that the ALJ's determination that Plaintiff's symptoms did not meet, or medically equal Listing 11.05 and 11.14 is supported by substantial evidence. The ALJ considered the following in her analysis: that Plaintiff holds onto a desk when she stands; she walks normally, heel to toe with tandem gait; her Romberg sign testing showed no sway or falling;

[10] For instance, although Plaintiff's balance "was affected," this is insufficient to meet 11.05A, which requires that Plaintiff suffer from an *extreme limitation* in the ability to in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.05A. Plaintiff has not articulated how her balance being "affected" might equate to an "extreme limitation." Additionally, although Plaintiff argues that "the Commissioner's non-examining psychiatric expert testified that plaintiff's pronounced social anxiety disorder produced 'moderate to marked' limitations in her ability to interact with others[,]" (Mov. Br. at 16–17), Plaintiff presents that testimony out of context. During that testimony, the ALJ directly questioned that expert (Dr. Efobi), who explicitly opined that Plaintiff did not meet any of the Listings because she failed to meet the "B" criteria for various mental disorders. (D.E. No. 7-1 at 50 (ECF Pagination) ("Q: Okay. So you're saying that . . . none of these meet or equal a listing because of the B criteria? A: Correct, Your Honor.")). The ALJ also confirmed Dr. Efobi's "moderate to marked" limitation in interacting with others. (*Id.*). Having considered (and participated in) that testimony, as well as other evidence that she identified the ALJ specifically found that Plaintiff suffered from a "moderate" limitation. (*Id.* at 22–23). A "moderate" limitation, however, will not satisfy 11.05B. Plaintiff has not specifically identified any other evidence to demonstrate that she met the requirements of either subpart. Plaintiff has, therefore, failed to demonstrate that her limitations meet either 11.05A or 11.05B.

her motor examination for her extremities was "unremarkable;" and her musculoskeletal examination showed a good range of motion of her extremities with normal tone and no atrophy. (R. at 24 & 26). Plaintiff identifies no additional evidence that the ALJ should have considered but did not—let alone evidence that would supports the finding that Plaintiff has an *extreme* limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, which is required under 11.05A and 11.14A. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.05A & 11.14A.[11] Therefore, the Court is satisfied that substantial evidence supports the ALJ's conclusion that Plaintiff does not satisfy 11.05A or 11.14A.

Furthermore, the ALJ, in making her determination on Plaintiff's mental impairments, found that Plaintiff had moderate and mild, rather than marked or extreme, limitations in the 11.05B and 11.14B requirements: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. (R. at 22–23); *see* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.05B & 11.14B. Since the ALJ supported her mental impairment conclusions with Plaintiff's testimony and medical records,[12] the ALJ provided sufficient evidence to support her findings for Listing 11.05

---

[11] An extreme limitation is "the *inability* to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00D2.

[12] The ALJ considered the following with regards to Plaintiff's understanding, remembering, or applying information: her testimony that she is unable to concentrate, her memory is bad, she has "brain fog," she is unable to finish what she starts, she needs to read written instructions multiple times, she asks questions when given spoken instructions, medical records demonstrate and "somewhat support[]" self-reported lack of attention and concentration, and at times she was noted to have no limitations. (R. at 22). The ALJ considered the following with regards to Plaintiff's ability to interact with others: her testimony that she does not like loud places, she has no social life, her function report indicates that she has social phobia and has had it for her whole life, she used to volunteer, she lives with her parents and attends religious services, she has trouble getting along with others, she is not fully present and often irritable and depressed, she has stopped socializing and mainly stays at home, her treatment records show she has good friends and is close with her family. (*Id.* at 22–23). The ALJ considered the following with regards to Plaintiff's concentrating, persisting, or maintaining pace: : her testimony that she is unable to concentrate, her memory is bad, she has "brain fog," she is unable to finish what she starts, she needs to read written instructions multiple times, she asks questions when given spoken instructions, medical records demonstrate and "somewhat support[]" self-reported lack of attention and concentration, and at times she was noted to have no limitations. (*Id.* at 23). The ALJ considered the following with regards to Plaintiff's ability to adapt and manage herself: her testimony that she tends to isolate, but that she is able to travel alone, using public transportation; she is able to shop in stores in person, by

and 11.14. Accordingly, this Court finds that the ALJ did not commit reversable error regarding Listings 11.05 or 11.14.

**iii. Mental Impairments – Paragraph B and C Criteria**

Plaintiff also argues that the ALJ's Paragraph B and C criteria are unreviewable because (i) the decision does not indicate what the Paragraph C criteria are, why Plaintiff does not meet them, or what evidence the ALJ used to come to her conclusion; and (ii) the ALJ incorrectly applied and failed to consider various factors when evaluating the Paragraph B criteria, resulting in incorrect conclusions. (Mov. Br. at 18–23). Specifically, Plaintiff argues that, with regard to the Paragraph B criteria, the ALJ erroneously concluded that Plaintiff has a mild limitation in concentrating, persisting, or maintaining pace because she did not explicitly address the relevant criteria. (*Id.* at 19–21). Additionally, Plaintiff contends that the ALJ failed to consider the following when evaluating Plaintiff's ability to interact with others: that Plaintiff asked her family to not be involved in her treatment; she was unable to process her grandmother's death; she never learned to drive; she never had intimate relationships, married, or had children; and she does not have visitors or friends, except for one friend who calls her via the phone. (*Id.* at 22–23). Commissioner opposes, arguing that the ALJ provided substantial evidence to support her findings and adequately explained her conclusions. (Opp. Br. at 15). For reasons described below, the Court agrees with the Commissioner.

The Court begins its analysis with Paragraph B, which requires, in relevant part, that a mental impairment result in an "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand[ing], remember[ing], or apply[ing] information; (2) interact[ing] with others; (3) concentrate[ing], persist[ing], or maintain[ing] pace;

---

mail, and by computer; she is able to handle money; she attends doctor's appointments; she is limited with household chores, but is able to perform personal care. (*Id.*).

[or] (4) adapt[ing] or manag[ing] oneself." 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02, 12.03, 12.06 & 12.07. In conducting the step three analysis, the ALJ is not required to "use particular language or adhere to a particular format." *Jones*, 364 F.3d at 505. Nor is the ALJ expected "to make reference to every relevant treatment note in a case." *Fargnoli*, 247 F.3d at 42. Rather, the ALJ's decision must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120).

The ALJ's decision, taken as a whole, contains substantial evidence supporting the finding that Plaintiff does not satisfy the Paragraph B criteria. In considering Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ found that Plaintiff had a mild limitation because Plaintiff's testimony of lack of attention and concentration was only "somewhat supported" and, at times, it was noted that she had "no limitations in this regard." (R. at 23). Additionally, when evaluating Plaintiff's RFC, the ALJ considered a mental status examination, which showed that Plaintiff's memory, attention, and concentration were intact. (*Id.* at 25–26). This constitutes substantial evidence supporting the ALJ's finding that Plaintiff has only a mild limitation in concentrating, persisting, or maintaining pace. (*See id.* at 23). Although Plaintiff argues that her attention deficit prevents her from functioning in the workplace, and criticizes the ALJ's analysis on that point, Plaintiff presents no record evidence in support of her argument. (Mov. Br. at 20–21). Therefore, she has failed to meet her burden of "affirmatively point[ing] to specific evidence that demonstrates [s]he should succeed." *Woodson*, 661 F. App'x at 766.

Additionally, in considering Plaintiff's ability to interact with others, the ALJ found that she has only a moderate limitation. (R. at 22). The ALJ considered Plaintiff's testimony and medical records when evaluating this category of the Paragraph B criteria. (*See id.* at 22–23). Although Plaintiff argues that the ALJ failed to consider various aspects of the record in coming

to her conclusion, the ALJ is not required to consider every aspect of the record, *Fargnoli*, 247 F.3d at 42, but rather merely cite to sufficient evidence to enable meaningful review, *Jones*, 364 F.3d at 505. In her analysis, the ALJ considered that Plaintiff volunteers and attends religious services, limited by her pain and lack of interest. (R. at 22 & 24). This contradicts Plaintiff's claims that she is "*unable* to leave the limited environment of her mother's care" and "tolerate face-to-face encounters with others." (Mov. Br. at 23 (emphasis added)).

The evidence Plaintiff cites also fails to demonstrate the *inability* or *serious limited ability* to function independently, appropriately, or effectively, as required for extreme or marked limitations. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F2d–e. Furthermore, during the ALJ's RFC analysis, she noted that Plaintiff can travel by public transport; can go out alone; has "trouble" socializing with others because she is irritable, depressed, and not in the mood to be around anyone; and has good friends and is close with her family. (R. at 24 & 28). This further indicates that Plaintiff does not have the "inability" or "serious[ly] limited ability" to function independently, appropriately, or effectively. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F2d–e.

Finally, the Court must consider the ALJ's findings regarding limitations on Plaintiff's ability adapt or manage herself. The Court has previously found that this evaluation requires the ALJ to consider Plaintiff's capabilities "in a work setting." *Hugo R. v. Comm'r of Soc. Sec.*, No. 22-3581, 2025 WL 3648764, at *5 (D.N.J. Dec. 15, 2025) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E4). Here, it is not clear that the ALJ has done so. While the ALJ confirmed Plaintiff's ability to "go out alone", travel using public transportation or by riding in a car, shop in stores, by mail, and by computer, handle money, and attend to her own personal care (R. at 23), it is not immediately apparent how most of those circumstances translate to the workplace setting. Without more explanation, the Court cannot find that the ALJ has based her determination

regarding Plaintiff's adaptability/self-management on substantial evidence. While the ALJ has erred in this respect, *Hugo R.*, 2025 WL 3648764 at *5–6, the Court nonetheless finds that this error was harmless. Specifically, Plaintiff has not identified any specific evidence suggesting that (i) she had an "extreme" limitation on her ability to adapt/manage herself; or (ii) that she had a "marked" limitation in that regard, along with a marked limitation regarding another Paragraph B criterion (i.e., that Plaintiff would have otherwise met the Paragraph B requirements if not for the ALJ's error).

In sum, the ALJ's conclusion that Plaintiff does not meet the Paragraph B criteria is supported by substantial evidence. To the extent that Plaintiff asks this Court to reweigh the evidence or "substitute its conclusions for those of the [ALJ,]" it may not do so. *See Williams*, 970 F.2d at 1182.

The Court now turns to Paragraph C, which requires that Plaintiff demonstrate:

> a medically documented history of the existence of . . . [her] disorder over a period of at least 2 years, and that there is evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [her] mental disorder; ***and*** (ii) marginal adjustment, that is, [she] ha[s] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life.

*Id.* §§ 12.02, 12.03, 12.06 & 12.07 (emphasis added). Although Plaintiff argues that the ALJ's decision regarding Paragraph C is unreviewable for failing to define the relevant criteria and include supporting explanations and evidence, she offers no evidence to demonstrate that the Paragraph C criteria would be satisfied here. (Mov. Br. at 18–19). She has therefore failed to meet her burden, and the Court rejects her Paragraph C argument. *See Anthony P. v. Comm'r of Soc. Sec.*, No. 21-17714, 2023 WL 6806008, at *5 (D.N.J. Oct. 16, 2023) (finding that Plaintiff failed to "affirmatively point[] to specific evidence that" the paragraph C criteria were satisfied)

(citing *Woodson*, 661 F. App'x at 766). And, again, to the extent that Plaintiff asks this Court to reweigh the evidence, it cannot do so. *See Williams*, 970 F.2d at 1182.

### C. Step Four

Step four concerns Plaintiff's RFC, which involves "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Assessing RFC In Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1545(a). SSR 96–8p states that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1. The ALJ must address the physical functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and each function "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." *Id.* at *5. Only after the function-by-function analysis "may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* at *1.

With regard to step four, Plaintiff argues that the ALJ failed to provide evidentiary rationale for her RFC findings. (Mov. Br. at 23). Specifically, Plaintiff contends that the ALJ failed to (i) perform a function-by-function analysis of Plaintiff's ability to perform sedentary work; and (ii) consider Plaintiff's subjective complaints of pain. (*Id.* at 30–34). The Commissioner opposes, arguing that the ALJ relied on expert testimony to draw conclusions, adequately discussed Plaintiff's limitations in her RFC analysis, and cited substantial evidence in support of her evaluation of Plaintiff's subjective complaints. (Opp. Br. at 20–23). The Court considers these arguments in turn.

**i. Function-by-Function Analysis**

Plaintiff contends that the ALJ failed to conduct a function-by-function analysis, as required by SSR 96-8p, when finding that Plaintiff retained the RFC to perform sedentary work yet failing to explain Plaintiff's functionable capabilities in terms of sitting, standing, lifting, carrying, or walking. (Mov. Br. at 30–31). In opposition, the Commissioner asserts that Plaintiff conflates what must be *considered* with what must be *discussed* in the ALJ's decision. (Opp. Br. at 21). For the following reasons, the Court finds in favor of the Commissioner.

"[A]n ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis." *Lorie H. v. Comm'r of Soc. Sec.*, No. 20-13192, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022) (citation omitted); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (stating that the ALJ is not required to recite every tidbit of evidence). Notably, when formulating the RFC, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce . . . a detailed statement in writing." *Torres v. Comm'r of Soc. Sec.*, No. 14-6178, 2015 WL 8328346, at *8 (D.N.J. Dec. 8, 2015) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (Table), 00–1995, slip op. at 4 (3d. Cir. Dec. 19, 2000)). In fact, the Third Circuit does not require an ALJ to perform a "function-by-function" analysis at step four, as long as the ALJ's RFC determination is supported by substantial evidence in the record. *See Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do."); *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-

by-function assessment outlined in SSR 96–8p, where the ALJ questioned the claimant about the physical limitations of her prior work, and substantial evidence supported the ALJ's findings). Rather, the ALJ must merely "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Hernandez-Flores v. Comm'r of Soc. Sec.*, No. 13-4738, 2015 WL 4064669, at *6 (D.N.J. July 1, 2015) (citing *Bencivengo*, slip op. at 4–5). In other words, to discharge her evaluative obligation, the ALJ must consider all of the relevant evidence, and must render an RFC finding "with 'a clear and satisfactory explication'" of the substantial bases upon which it rests. *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. 2005) (citing *Fargnoli*, 247 F.3d at 41).

The ALJ's RFC determination in this instance satisfies this standard. In assessing Plaintiff's RFC, the ALJ discussed Plaintiff's medical history, her self-reported limitations and abilities, her hearing testimony, the opinions of the medical experts, as well as other record evidence. (R. at 24–29). The ALJ began her RFC analysis by recounting Plaintiff's testimony regarding her symptoms: social phobia, severe pain, numbness, balance issues, brain fog, concentration issues, poor memory, and lack of sleep. (*Id.* at 24). The ALJ noted that Plaintiff can perform personal care, but experiences pain when bathing, cooking, ironing, and doing the dishes. (*Id.*). Plaintiff described having trouble getting along with others, finishing what she starts, and reading instructions. (*Id.* at 24–25).

The ALJ then found that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent because the subjective complaints [were] not fully supported by the objective medical evidence." (*Id.* at 25). To support

this conclusion, the ALJ considered medical evidence, including a March 2017 MRI, March 2017 thyroid ultrasound, records concerning vestibular (imbalance) physical therapy treatment, a July 2018 electrodiagnostic study, mental status examinations, muscle strength tests, a February 2019 thoracic spine examination, a motor examination, a musculoskeletal examination, gait testing, Romberg sign testing, an October 2019 MRI, a Wechsler Memory Scale test, and Plaintiff's other medical records. (*Id.* at 25–28). Results indicated that Plaintiff had the following: a small syrinx of the cervical cord; posterior disc herniation; minor disc bulges; nodules in the left lobe of her thyroid; left-sided C6 radiculopathy; intact memory; intact attention and concentration; unremarkable muscle strength in the extremities; normal deep tendon reflexes and no sensory loss; normal thoracic spine results with full active and passive range of motion and nontender on palpation; unremarkable motor examination in the extremities; good range of motion in the extremities with normal tone and no atrophy; normal stride, arm swing, and turning; no swaying or falling; microadenoma and benign neoplasm of the pituitary gland; no compressive symptoms of the thyroid nodules; asymptomatic with regard to hyperprolactinemia; no indication of thought disorder; and adequate insight and judgment. (*Id.*).

After considering the aforementioned evidence, the ALJ concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. 404.1567(a), with various limitations, "based on the entire record." (*Id.* at 29). Such limitations included occasionally climbing stairs, bending, kneeling, and crawling; never climbing ladders, scaffolds, or ropes; never balancing; not working on uneven surfaces; frequently using hands for handling and fingering; not having contact with unprotected heights or dangerous machinery; work that can be learned in one month or less, involving simple instructions; occasionally contacting with supervisors; minimally contacting with the general public; working in proximity of co-workers, but not together with them. (*Id.* at 23).

Although the ALJ did not perform a task-by-task analysis, her decision is supported by substantial evidence in the record, as detailed above. (*Id.* at 25–29). This satisfies the ALJ's responsibility. *See Chiaradio*, 425 F. App'x at 161; *see also Garrett*, 274 F. App'x at 164. Furthermore, SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC discussion. SSR 96-8p, 1996 WL 374184, at *5. Indeed, SSR 96-8p contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually. *Id.* Although the ALJ did not explicitly opine on each element of the "sedentary work" exertional level, that does not mean the ALJ did not "consider" those functions. In fact, as detailed below, the ALJ's detailed RFC analysis clearly referenced tasks relevant to the "sedentary work" analysis.

The regulation defines "sedentary work" as follows:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a). Further, SSR 83-10 provides that [s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Determining Capability To Do Other Work*, SSR 83-10, 1983 WL 3125, at *5 (S.S.A. Jan. 1, 1983). Here, with respect to Plaintiff's ability to stand and walk, the ALJ considered multiple medical evaluations, which indicated that Plaintiff had a normal heel to toe walk with no swaying or falling. (R. at 26). Those evaluations described her gait as tandem (*id.*), as well as normal, (*id.* at 27). With respect to Plaintiff's ability to sit, the ALJ considered Plaintiff's testimony indicating that "she needs to sit and rest and [] is limited with

standing due to pain" (*id.* at 24), "sitting in a hard chair causes severe coccyx pain" (*id.* at 27), and "sitting for prolonged time made things worse" (*id.*). As such, the ALJ did not err in her articulation of Plaintiff's RFC by not explicitly opining on each element of the "sedentary work" exertional level. Lastly, the ALJ considered the internal medicine medical expert's testimony that the Plaintiff functions "at a sedentary level and that B-12 treatment should dramatically improve her condition." (*Id.* at 28).[13] This is particularly so given that the ALJ's detailed RFC analysis clearly referenced tasks related to the "sedentary work" analysis. *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021) ("Prior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it. Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function assessment prior to his RFC determination."). Accordingly, the ALJ considered all the relevant evidence and rendered an RFC finding with a clear and satisfactory explication of the substantial bases upon which it rests, which is all she was required to do.

Additionally, the ALJ's discussion detailed above reflects that, when explaining why Plaintiff could perform sedentary work, the ALJ implicitly concluded, consistent with the elements of the "sedentary work" exertional level, that Plaintiff's muscle strength in her extremities was "unremarkable." (R. at 25). Based on the analysis contained within the ALJ's opinion and the

---

[13] For instance, the ALJ noted the internal medicine expert's finding that a B-12 deficiency may be a cause of Plaintiff's proprioception, which, in turn, could impact her balance. (*Id.* at 28). Though the ALJ noted the expert's finding that B-12 treatment would improve Plaintiff's condition, the ALJ nonetheless included balancing and related activities (climbing, walking on uneven surfaces, exposure to unprotected heights, etc.) as specific limitations in Plaintiff's RFC. (*Id.* at 23).

inquiries made on the record at the administrative hearing, the Court finds that the ALJ complied with the requirements of SSR 96-8p.

**ii. Plaintiff's Subjective Complaints**

Plaintiff lastly argues that the ALJ failed to consider Plaintiff's own testimony in making her determination as to Plaintiff's limitations. (Mov. Br. at 33). The Commissioner opposes, asserting that the ALJ considered Plaintiff's testimony in the context of the entire record, and explained how she factored them into her RFC findings. (Opp. Br. at 23). For the following reasons, the Court agrees with the Commissioner.

If a plaintiff has a medically determinable impairment that could reasonably be expected to cause her alleged symptoms, the ALJ will evaluate the plaintiff's subjective complaints and allegations of disability based on the record as a whole. *See* 20 C.F.R. § 404.1529. "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d at 362.

In making her RFC determination, the ALJ considered Plaintiff's testimony. (R. at 24–29). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 25). More specifically, the ALJ considered Plaintiff's allegations that she had all over body pain with intermittent numbness and weakness in the extremities. (*Id.*). However, the ALJ noted good range of motion of the extremities; unremarkable motor examination in the extremities; normal stride, arm swing and turning from gait testing; normal heel to toe walking; and no swaying or falling. (*Id.* at 26). As for Plaintiff's concentration and memory, the ALJ considered that a

mental status review showed that Plaintiff's memory, attention, and concentration were intact and that she was able to remember four numbers oriented forward, and three oriented backward. (*Id.* at 26–27). The ALJ further considered Plaintiff's allegations of social anxiety, but also that Plaintiff volunteers and attends religious services, has good friends, and is close with her family. (*Id.* at 23–24). As noted above, the ALJ's findings regarding Plaintiff's all over body pain with intermittent numbness and weakness in the extremities, concentration and memory, and social anxiety are all supported by substantial evidence. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's testimony was inconsistent with the medical evidence in the record. Further, Plaintiff has not identified any specific evidence that supports her testimony regarding the intensity and length of her symptoms. (*See* Mov. Br. at 33–36). Therefore, Plaintiff "has failed to meet [her] heavy burden to establish that the ALJ's credibility determination should be reversed." *Hoyman v. Colvin*, 606 F. App'x 678, 681–82 (3d Cir. 2015).

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner. An appropriate Order accompanies this Opinion.

Dated: August 19, 2026

*s/Esther Salas*
**Esther Salas, U.S.D.J.**